IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

NAUTILUS INSURANCE COMPANY PLAINTIFF

NO. 09-4075

KERRY MOSBEY; KGM CONSTRUCTION, INC.; BOB HARRISON; AND JAN HARRISON DEFENDANTS

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (REFILED)

## I. INTRODUCTION

Nautilus Insurance Company ("Nautilus") moves for summary judgment to the effect that it has no duty to defend or indemnify Kerry Mosbey or KGM Construction, Inc. with respect to claims asserted against them by Bob and Jan Harrison in a lawsuit filed in the Circuit Court of Miller County, Arkansas, Civil Division, Cause No. CV 2008-177-3 (the "underlying action"). Nautilus is entitled to the relief requested for numerous reasons. First, the named insured in the insurance policy is Kerry Mosbey, and KGM Construction, Inc. does not qualify as an insured under the policy. Second, the insurance policy was effective only from October 4, 2003 to October 4, 2004, and no "property damage" or "bodily injury" occurred during that policy period. Third, the Harrisons' claims against Kerry Mosbey and KGM Construction, Inc. are not claims for damages because of "bodily injury" or "property damage" caused by an "occurrence," as required by the insuring agreement under the policy. Fourth, the damages claimed by the Harrisons are not damages because of

"property damage" as defined in the policy. Fifth, an exclusion to coverage contained in the policy for "bodily injury" or "property damage" expected or intended from the standpoint of the insured is applicable, and the exclusion supports the conclusion that there was no "occurrence" as required by the policy. Finally, if there was any "property damage" that occurred during the policy period of the Nautilus policy, an exclusion for "property damage" to property on which the insured or any contractors or subcontractors working directly or indirectly on behalf of the insured are performing operations is applicable.

Numerous other exclusions are contained in the policy of insurance, and Nautilus reserves the right to rely on some or all of those exclusions to argue that Nautilus is entitled to summary judgment with respect to some or all of the claims made by the Harrisons in the underlying action, in the event the present Motion for Summary Judgment is not granted.

II. KGM CONSTRUCTION, INC. IS NOT AN INSURED UNDER THE POLICY.

Nautilus Insurance Company issued Policy No. NC 287477 to Kerry Mosbey for the policy period from October 4, 2003 to October 4, 2004. The "Form of Business" shown on the declarations page is "Individual." In Section II of Form CG 00 01 10 01, entitled "Who Is an Insured," the policy states:

If you are designated in the Declarations as:

> a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

KGM Construction, Inc., a corporation, is obviously not the "spouse" of the named insured, Kerry Mosbey. Therefore, KGM Construction, Inc. does not qualify as an insured under the policy.

## III. NO "PROPERTY DAMAGE" OR "BODILY INJURY" OCCURRED DURING THE POLICY PERIOD.

On Form CG 00 01 10 01, under Section I - Coverages, Coverage A, Bodily Injury and Property Damage Liability, paragraph 1.b. provides, in relevant part:

> b. This insurance applies to 'bodily injury' and 'property damage' only if:
>
> (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';
>
> (2) The 'bodily injury' or 'property damage' occurs during the policy period ....

In his deposition in the underlying action, Bob Harrison testified that the agreement for the construction of the home was entered into in August 2004, but the Harrisons did not actually move into the residence until October or November of 2005. Mr. Harrison testified that they began experiencing leaks at the windows within three or four months after moving in, and that they began observing cracks in the exterior insulation and finish system ("EIFS") within six months of moving in. Mr. Harrison testified that he had no issues with the construction work performed before they moved into the residence, and the

"punch lists" they provided to Mr. Mosbey regarded only cosmetic matters. *See* Ex. C.

In her deposition in the underlying action, Mrs. Harrison testified that the only problem with the house that she brought to Mr. Mosbey's attention before they moved into the house was that the rocks on the fireplace were not properly grouted. She further testified that within the first month after they moved in, rock began falling off the fireplace because there was not enough grout, and some grout began cracking in the bathrooms. *See* Ex. D.

As stated previously, the Nautilus policy expired on October 4, 2004. Therefore, no "property damage" or "bodily injury" occurred during the policy period, as required by the above quoted policy provision.

## IV. NONE OF THE CLAIMED DAMAGES WERE CAUSED BY AN "OCCURRENCE."

The next issue is whether Kerry Mosbey may become legally obligated to pay damages because of "bodily injury" or "property damage" caused by an "occurrence." In relevant part, the insuring agreement for Coverage A in Form CG 00 01 10 01 provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.
>
> * * *

> b. This insurance applies to 'bodily injury' and 'property damage' only if:
>
> > (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' ....

In the Nautilus policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In *Essex Ins. Co. v. Holder*, 370 Ark. 465, 261 S.W.3d 456 (2007), the Arkansas Supreme Court addressed an issue of first impression: "whether defective construction or workmanship is an 'accident' and therefore, an 'occurrence' within the meaning of commercial general liability insurance policies." *Id.*, 370 Ark. at 467, 261 S.W.3d at 457. The court held that "defective workmanship standing alone--resulting in damages only to the work product itself--is not an occurrence under a CGL policy such as the one at issue here." *Id.* at 467, 261 S.W.3d at 460. In so holding, the court focused on the accidental nature of an "occurrence" under a CGL policy. The definition of "occurrence" in the Nautilus policy is substantially similar to the definition of that term considered in the *Essex* case.

In *Essex*, the Arkansas court relied heavily on an earlier federal case arising in Arkansas, *Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 354 F. Supp. 2d 917 (E.D. Ark. 2005), in which the federal court predicted that the Arkansas Supreme Court would "elect to join the majority of courts in jurisdictions throughout the country which have concluded that defective

workmanship does not constitute an 'occurrence' ...." *Id.* at 922 (internal quotation omitted). In *Nabholz,* despite the facts that the defective workmanship was that of the insured's subcontractor and that the defective workmanship was discovered after the owner took possession of the building, the court held there was no "occurrence."

The holdings of the courts in the *Essex* and *Nabholz* cases were reaffirmed in a recent federal case arising in the Western District of Arkansas, *Cincinnati Ins. Cos. v. Collier Land Holdings, LLC,* 614 F. Supp. 2d 960 (W.D. Ark. 2009). In *Cincinnati,* Collier and the insured, Benchmark Construction, entered into an agreement under which Benchmark would construct a commercial building. After substantial completion of the building and occupancy by tenants, water infiltrated the building through the ceiling, walls and floor. Among other things, this caused mold to grow in the interior walls. In its complaint against Benchmark Construction, Collier alleged that it suffered damages including the cost of repair, cost of remediation, loss of use of the building, financing cost, loss of business expectancy, costs, attorney's fees and other damages. Collier sought to recover from Benchmark Construction on claims of breach of contract and negligence. The parties did not dispute that in order to fulfill the construction contract, Benchmark Construction employed the services of subcontractors.

Relying upon the *Essex* and *Nabholz* cases, Cincinnati brought a declaratory judgment action seeking a declaration that it had no duty to defend

or indemnify Benchmark Construction against the claims made against it. One of the contentions of Benchmark was that damage to nondefective portions of the building, caused by the intrusion of water into the building, was an "occurrence." The federal court disagreed, stating: "[A] general contractor cannot segment his or her work into that performed by various subcontractors, some of which is defective and some of which is not, in order to create an 'occurrence.' " *Id.* at 966. The court further noted that under Arkansas law, even if an "occurrence" other than defective workmanship could be identified, the damages could not be said to be the result of "property damage" under Arkansas law. Citing *Unigard Security Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998), the court held that a failure to perform contractual obligations is not "property damage."

The federal court in *Cincinnati* granted the insurer's motion for summary judgment, finding no duty to defend or indemnify.

As a result of the cases discussed, it is now well established under Arkansas law that defective construction or workmanship is not an "accident" or "occurrence" within the meaning of commercial general liability insurance policies, such as the Nautilus policy involved in this case. Because there is no "occurrence," the requirements of the basic insuring agreement contained in the policy are not met, there is no coverage under the policy, and Nautilus is not obligated to defend or indemnify Kerry Mosbey or KGM Construction, Inc. with respect to the claims made against them by Bob and Jan Harrison in the underlying action.

## V. THE DAMAGES CLAIMED ARE NOT DAMAGES BECAUSE OF "PROPERTY DAMAGE."

In *Nabholz, Essex* and *Cincinnati,* each of the courts relied upon *Unigard Security Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998), for the proposition that damages awarded for breach of contract cannot be categorized as liability imposed "because of" any "property damage," as those terms are used in general liability policies. In *Unigard*, the issue was whether general liability policies issued to Murphy Oil provided coverage for a judgment that had been entered against Murphy Oil for breach of a lease contract and for trespass. The underlying facts were that during the time that Murphy Oil leased certain property from the Blakely Corporation, Murphy Oil allowed petroleum products and other pollutants to be discharged and/or remain on the property, and did not comply with the lease provision which required Murphy Oil to surrender the premises at the expiration of the lease "in as good state and condition as reasonable usage thereof [would] permit." *Id.*, 331 Ark. at 216, 962 S.W.2d at 737. The insurance companies argued that their policies did not cover the liability that Murphy Oil incurred because the liability did not arise from any "property damage" within the meaning of the policies, and the Arkansas Supreme Court agreed. The court found that the judgment entered against Murphy Oil was for breach of the lease, and not on account of any property damage that resulted from Murphy Oil's operations, even though the breach of the lease involved damage to the property in the form of pollution. The court found: "The liability incurred by Murphy Oil in the underlying

Alabama suit represented the 'economic loss' that the Blakely Corporation suffered on account of Murphy Oil's breach, and such losses simply are not covered by the language of the policies Murphy Oil purchased from its insurance carriers." *Id.*, 331 Ark. at 226, 962 S.W.2d at 743.

The reasoning of the Arkansas Supreme Court in *Unigard* was explicitly relied upon by the federal court in *Cincinnati.* Although the claimant in the underlying action against the insured alleged not only breach of contract but also negligence on the part of the insured, the court found that the claimant had "done nothing more than allege that defective workmanship was the cause of its damages." *Cincinnati,* 614 F. Supp. 2d at 968. The court held not only that there was no coverage under the policy for damages arising from the insured's alleged breach of its contract with the claimant, *Id.* at 967, but also that even though the complaint against the insured also alleged negligence, it in fact alleged nothing more than that defective workmanship was the cause of its damages, and "[a]ccordingly, an 'occurrence' other than defective workmanship has not been alleged, and Cincinnati has no duty to defend or indemnify [its insured]." *Id.* at 968.

Thus, Arkansas law is in accord with the "great weight of ... authority" that where a claim against an insured does not involve damage to property other than the completed work itself, there is no "physical injury to tangible property" or "property damage." *See R.N. Thompson & Assocs., Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 162-63 (Ind. App. 1997).

As in the *Cincinnati* case, the Harrisons in this case have done nothing more than allege that defective workmanship was the cause of their damages. Accordingly, Nautilus has no duty to defend or indemnify Kerry Mosbey or KGM Construction, Inc.

VI. EXCLUSION FOR EXPECTED OR INTENDED INJURY

Apart from the significant issues as to whether there is coverage under the basic insuring agreement, there are several applicable exclusions. On the Commercial General Liability Coverage Form, one such exclusion is as follows:

> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.

In *Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 354 F. Supp. 2d 917 (E.D. Ark. 2005), the insurer argued that the definition of "accident" should be read in conjunction with a policy exclusion excluding property damage that is expected or intended by the insured. The federal court agreed, stating:

> The Court agrees that a contractor's obligation to repair or replace its subcontractor's defective workmanship should not be deemed 'unexpected' on the part of the contractor, and therefore, fails to constitute an 'event' for which coverage exists.

*Id.*, 354 F. Supp. 2d at 921.

Similarly, in *Cincinnati,* after discussing the *Nabholz* and *Essex* cases, the court stated: "Defective workmanship is a foreseeable risk associated with the employment of subcontractors." *Cincinnati, supra* at 966.

Many other courts have held that a contractor's obligation to repair or replace defective workmanship is not to be deemed "unexpected" on the part of the contractor, and thus not an "occurrence." *E.g., Lerner Corp. v. Assurance Co. of America,* 120 Md. App. 525, 707 A.2d 906 (1998); *Harbor Court Assocs. v. Kiewit Constr. Co.*, 6 F. Supp. 2d 449, 459 (D. Md. 1998).

The exclusion for expected and intended injury is yet another reason that the Motion for Summary Judgment by Nautilus should be granted.

## VII. EXCLUSION FOR PROPERTY DAMAGE TO PROPERTY ON WHICH THE INSURED IS PERFORMING OPERATIONS.

For reasons previously stated, the claims of the Harrisons in the underlying action are not claims for damages because of "property damage," and, even if any "property damage" occurred, it did not occur during the policy period. Nevertheless, if there was any "property damage" that occurred during the policy period, it would have necessarily occurred while the insured or subcontractors working directly or indirectly on his behalf were performing operations. In that event, another exclusion on the Commercial General Liability Coverage Form would apply. This exclusion provides:

> This insurance does not apply to:
>
> * * *

**j. Damage To Property**

'Property damage' to:

* * *

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations ....

CONCLUSION

For all of the foregoing reasons, the policy of insurance issued by Nautilus to Kerry Mosbey affords no liability coverage for the benefit of either Kerry Mosbey or KGM Construction, Inc. with respect to the claims made against them by Bob and Jan Harrison in the underlying action. Nautilus respectfully submits that its Motion for Summary Judgment should be granted, and the Court should enter a judgment declaring that Nautilus has no duty to defend or indemnify either Kerry Mosbey or KGM Construction, Inc. with respect to the claims made by the Harrisons.

/s/BEVERLY A. ROWLETT
HUCKABAY, MUNSON, ROWLETT
AND MOORE, P.A.
REGIONS CENTER
400 W. CAPITOL, SUITE 1900
LITTLE ROCK, AR 72201
501/374-6535

CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2010, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Errol N. Friedman
enfriedman@texarkanalegal.com

Nelson V. Shaw
nelsonshaw@dodsondodson.com

/S/BEVERLY A. ROWLETT